UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **Michael Ching-Lung Wang,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-06-49 |
| | § | |
| **Formosa Plastics Corp., Texas,** | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. #16). The Court, having considered the motion, response, reply, the record and the relevant law, is of the opinion that the motion should be GRANTED.

## Background

The following facts are presented in the light most favorable to the non-movant. On July 16, 1996, Michael Ching-Lung Wang ("Wang") began work at Formosa Plastics Corp., Texas ("Formosa"). (Dkt. #16-3 at 2). Wang's initial title was "accountant." (Dkt. #16-3 at 2). Wang retained this title throughout his employment at Formosa, although his compensation increased from a "very low" amount to almost $60,000. (Dkt. #16-3 at 2-3).

**I.    Wang's Access to His Office Before Normal Business Hours**

During the course of his employment, Wang established a practice of arriving at work at approximately thirty minutes before the official opening time observed by the office. (Dkt. #16-5 at 6). Wang arrived at the Formosa Accounting office at approximately 7:15 A.M. while the office normally opened for business at 7:45 A.M. (Dkt. #16-5 at 6). To accommodate his schedule, Wang informed management of his early arrival and successfully applied for flexible work time. (Dkt. #16-5 at 6).

Prior to August 2003, Wang did not experience difficulty in obtaining office access at his early arrival time. (Dkt. #16-5 at 4). During that time period, a female employee, Emele Rubio ("Rubio"), arrived at work prior to Wang's arrival and unlocked the front door to the Formosa Accounting office. (Dkt. #16-5 at 3). Rubio was given a key to the front door to accomplish this task. (Dkt. #16-5 at 4). Like Wang, Rubio had successfully applied for flexible work time. (Dkt. #16-5 at 3-4).

In August 2003, Wang's method of office access changed. Rubio quit her job in August of 2003 and therefore was not available to unlock the front door before Wang's arrival. (Dkt. #16-5 at 4-5). At the time Rubio quit her job, one of Wang's supervisors, Jerry Lai ("Lai"), began to arrive at work early. (Dkt. #16-5 at 5). When Lai arrived, he would open the front door of Formosa Accounting for Wang. (Dkt. #16-5 at 5). Lai knew that Wang arrived early and that Rubio was no longer available to unlock the door. (Dkt. #16-5 at 5). Lai, however, concluded his practice of early arrival to open the office door after approximately one month. (Dkt. #16-5 at 5).

Once Lai no longer arrived early, Wang's difficulty in accessing his office increased. Wang did not have his own key to the front door of the office and the door was regularly locked. (Dkt. #16-5 at 5-8); (Dkt. #16-4 at 20). The only alternative means of ingress into Wang's office was through the neighboring office of Neumin Accounting.[1] (Dkt. #16-4 at 20-24). The Neumin Accounting office was situated on the same floor of the Formosa administration building as the Formosa Accounting office. (Dkt. #16-4 at 21). Furthermore, the Neumin Accounting office had an unlocked inner door which provided access to Formosa Accounting. (Dkt. #16-4 at 22). It was not uncommon for Neumin Accounting's front door to be unlocked while the front door of Formosa Accounting was locked. (Dkt. #16-4 at 22-23). Therefore, access to Wang's office was regularly available via the office of Neumin

---

[1] It is unclear whether the proper title of this accounting office is "Neumin Accounting" as referenced in Wang's briefs or "Newman Accounting" as referenced by the court reporter. The Court adopts Wang's references for the purposes of this order.

Accounting. However, on certain days both doors were locked and access to Wang's office was unavailable. On rare occasions, an employee from Wang's office would arrive early and unlock the front door of the Formosa Accounting office.

Wang did not feel that accessing his office through Neumin Accounting was legitimate. (Dkt. #16-4 at 20, 23). Although the precise relationship between Neumin Accounting and Formosa Accounting is unclear, the record contains evidence that the offices had separate front doors and separate signs. (Dkt. #16-4 at 21). Furthermore, managers from Wang's office would visit Neumin Accounting via the inner door as needed. (Dkt. #16-4 at 22). Although no one explicitly told him it was improper, Wang believed that if he accessed his office via Neumin Accounting, he would be trespassing. (Dkt. #16-4 at 23-26). Wang feared that if anything ever went wrong, he could become a suspect. (Dkt. #16-4 at 24). Nonetheless, Wang occasionally utilized the Neumin Accounting office to access the Formosa Accounting office. (Dkt. #16-5 at 7-8).

**II.    Management's Refusal to Permit Wang to Work on Weekends**

On October 5, 2004, Wang received an email from Shirley Lin ("Lin"), his direct supervisor, asking him to complete a special project. (Dkt. #16-7 at 14). In the same email, Lin requested that Wang complete the assignment by October 31, 2004. (Dkt. #16-7 at 14). On November 29, 2004, Lin again contacted Wang via email, asking him whether or not he completed the assignment. (Dkt. #16-7 at 14). Wang responded in an email on November 30, 2004, stating that he had made many attempts to complete the assignment, but had been unsuccessful. (Dkt. #16-7 at 13-14). Wang indicated that he wanted help from his managers. (Dkt. #16-7 at 14). Lin responded in an email on November 30, 2004, telling Wang that he needed to inform his managers of what he had been able to accomplish. (Dkt. #16-7 at 13). Lin also made some suggestions about how to pursue the assignment. (Dkt. #16-7 at 13). On December 8, 2004, Lin followed up with another email to Wang, asking for a response to

her prior email. (Dkt. #16-7 at 13). Wang responded in an email on December 9, 2004, stating that he wanted to work on the special assignment on weekends or holidays. (Dkt. #16-7 at 13). Wang further stated that he would like Lin or Jerry Lai to assist him on the project so that their "every day jobs" were not delayed. (Dkt. #16-7 at 13). On December 30, 2004, Lin sent Wang an email stating that she was disappointed in his inability to finish the assignment. (Dkt. #16-7 at 13). Lin further suggested that the project could be completed by manual means. (Dkt. #16-7 at 13). Lin stated that if the project was not completed by January 15, 2005 it would be treated as a "fail." (Dkt. #16-7 at 13). In the same email, Lin noted that Wang should not need to work on the project on the weekends or holidays because he has enough time in his present schedule. (Dkt. #16-7 at 13). Several more emails were exchanged between Wang and Lin on December 30, 2004 expressing difficulty with the assignment. (Dkt. #16-7 at 12). Ultimately, Wang never completed the assignment. (Dkt. #16-3 at 38); (Dkt. #16-4 at 8-9).

According to Wang, a female employee, Judy Lee, was permitted to work on weekends.[2] (Dkt. #16-5 at 16). Judy Lee's position and duties were substantially the same as Wang's position and duties. (Dkt. #16-5 at 18).

### III. Wang's Disciplinary Records, Performance Records and Discharge

The record contains several documents related to Wang's purported behavior and performance. A confidential memorandum dated September 16, 2002 from R.P. Smith, Formosa's general manager, chastised Wang for certain phrases he used in interoffice email. (Dkt. #16-7 at 1). A "warning/disciplinary notice" dated January 1, 2003 indicates that Wang approved certain items without a manager's review. (Dkt. #16-7 at 5). A "Communication/Counseling Form" dated December 17, 2003 indicates that Wang had double-payed for certain items despite instruction. (Dkt.

---

[2] The Court notes that Defendant objects to the use of this evidence as improper summary judgment evidence. (Dkt. #16 at 10).

#16-7 at 6). An email from Wang's supervisor, Jerry Lai, dated February 25, 2004 states that Wang should focus on facts rather than emotions when discussing business matters. (Dkt. #16-7 at 7). A "Human Resource Development Performance Rating" document dated March 1, 2004 states that Wang received a "B" rating and that while he had certain strengths, he also had certain areas that needed improvement. (Dkt. #16-7 at 8-9). A "Communication/Counseling Form" dated March 18, 2004 states that Wang used emotional wording in an interoffice email and sometimes raised his voice. (Dkt. #16-7 at 11). A "Communication/Counseling Form" dated December 15, 2004 indicates that Wang did not abide by his flexible work time schedule. (Dkt. #16-7 at 17). A "Communication/Counseling Form" dated December 22, 2004 indicates that Wang did not complete an assignment despite instruction. (Dkt. #16-7 at 18). A "Communication/Counseling Form" dated December 30, 2004 indicates that Wang used "'not related work wording'" in an interoffice email and that he showed improper attitude. (Dkt. #16-7 at 19). A "Communication/Counseling Form" dated January 27, 2005 states that Wang failed to perform a special assignment and that his supervisor had to complete the job.[3] (Dkt. #16-7 at 20). A "Communication/Counseling Form" dated January 27, 2005 states that Wang did not perform an inventory report on time. (Dkt. #16-7 at 21). A "Human Resource Development Performance Rating" dated March 1, 2005 states that Wang received a "C" rating. (Dkt. #16-7 at 23). A "Warning Notice" dated May 6, 2005 is signed by several supervisors and indicates that Wang is terminated. (Dkt. #16-7 at 28). The document states that the reasons for termination include the following: "Insubordination, by not following his manager's instructions. Making inappropriate and threatening comments to his manager. And behaving in an inappropriate manner."[4] (Dkt. #16-7 at 28).

---

[3] This document makes reference to the special assignment discussed in section II, *supra.*

[4] Wang testified that the basis of his discharge was misrepresented by Shirley Lin. (Dkt. #16-6 at 10-13). Specifically, Wang claims that he approached Shirley when he found out that he received a "C" performance rating. At that time, Wang asserts that he engaged Shirley in a conversation in Chinese, stating the following: "I'm afraid I will lose my job. If I lose job I will

Wang asserts that many of the statements made in the documents referenced above are not well founded and are inappropriate. This is consistent with an email from James Hough, a management level employee, stating that Wang's performance rating of "C" is not warranted. (Dkt. #17-2 at 8). Also, several emails from Wang's coworkers describe him as having positive workplace attributes. (Dkt. #17-2 at 7);(Dkt. #17-3 at 5,6).

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses,

---

become very poor like a beggar beg food to your house." (Dkt. #16-6 at 11). Wang claims that his comments were not threatening, but rather a request for mercy in concordance with certain aspects of Chinese culture. (Dkt. #16-6 at 11).

weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

## Discussion

To survive summary judgment, Wang must raise a genuine issue of material fact under the burden shifting test announced in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the burden shifting test, the allocation of the burden of production and the order for presentation of proof is as follows: (1) the plaintiff must first establish a *prima facie* case of discrimination; (2) if the plaintiff meets his burden, then the burden of production shifts to the defendant to produce evidence of a legitimate nondiscriminatory reason for its actions; and (3) if the defendant produces a legitimate reason, then the presumption of discrimination vanishes, and the plaintiff must demonstrate a genuine issue of material fact that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142-43, 120 S.C.t 2097, 147 L.Ed.2d 105 (2000). The Court of Appeals for the Fifth Circuit has held that a *prima facie* case is established when evidence of the following is presented: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for his position; (3) the plaintiff was subjected to an adverse employment action; and (4) the plaintiff was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows

that others similarly situated were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)(citations omitted).

To prevail on his discrimination claims, Wang must show that he suffered from adverse employment actions. In the context of Title VII substantive discrimination claims, the determination of whether or not certain facts amount to adverse employment actions depends on whether not those facts constitute ultimate employment decisions. *Pryor v. Wolfe*, 196 Fed. Appx. 260, 262-63 (5th Cir. 2006)(per curiam); *Dollis v. Rubin*, 77 F.3d 777 (5th Cir. 1995)(per curiam). Ultimate employment decisions involve actions such as hiring, firing, granting leave, discharging, promoting and compensating. *Dollis*, 77 F.3d at 782. In the context of substantive discrimination claims, Title VII was not intended to create a cause of action for employment-related decisions that may have a tangential effect on ultimate employment decisions, but are not in and of themselves ultimate employment decisions. *Id.* (citations omitted). Furthermore, Title VII "does not set forth 'a general civility code for the American workplace.'" *Burlington N. & Santa Fe Ry. Co. v. White*, --- U.S. ----, 126 S.Ct 2405, 2415, 165 L.Ed.2d 345 (2006)(quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).

Wang asserts that he has suffered from two adverse employment actions based on the use of company facilities.[5] First, Wang claims that Formosa's failure to provide office access at his early arrival time was an adverse employment action. Second, Wang claims that Formosa's failure to permit him to work on weekends was an adverse employment action. Wang does not raise any other bases

---

[5] Wang has apparently formed his belief that his asserted bases of discrimination constitute protected conduct due to an United States Equal Employment Opportunity Commission ("EEOC") publication. (Dkt. #17-5 at 9). Indeed, the EEOC's website referenced in Wang's brief presents the same information. Federal Laws Prohibiting Job Discrimination: Questions and Answers, http://www.eeoc.gov/facts/qanda.html (last visited August 6, 2007). This Court, however, is bound to apply the law as set forth by the Supreme Court of the United States and the Court of Appeals for the Fifth Circuit.

for his discrimination claims. *E.g.*, (Dkt. #16-6 at 22). Accordingly, the Court limits its inquiry to these two bases.

After examining the facts of this case and the relevant law, the Court finds that Formosa's failure to provide Wang access to the front door of the Formosa Accounting office at his early arrival time is not an adverse employment action. Wang's lack of early access did not substantially affect his hiring, firing, granting of leave, discharge, promotion or compensation. Specifically, Wang makes no claim that his lack of early access affected his hiring, granting of leave, promotion or compensation. Furthermore, Wang has emphasized that his firing/discharge was the result of a false accusation about threatening behavior and not his lack of early office access. (Dkt. #16-6 at 22). Moreover, Wang's limited early access closely resembles the result of administrative actions affecting working hours. Such administrative actions have been determined not to be adverse employment actions by the Fifth Circuit. *See Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998). Notably, another district court has found that the failure to provide an employee with a key to office premises and the failure to allow an employee to set their own working hours are not adverse employment decisions. *Oyoyo v. Baylor Health Network, Inc.*, No. Civ.A. 3:99CV0569L, 2000 WL 655427, *18-19 (N.D. Tex. 2000)(holding that such actions "simply do not rise to the level of an ultimate employment action")(citations omitted).

At most, Wang's difficulty in early office access resulted in a "Communication/Counseling Form" action which effectively put him on three months "probation." (Dkt. #16-7 at 17). According to the counseling form, its basis involved Wang's occasional late arrival to work, excessive lunch breaks and prompt end of work departure. (Dkt. #16-7 at 17). The form further indicates that Wang's flexible work time would be revoked and he would be put on "warning notice" if he did not improve. (Dkt. #16-7 at 17). However, the record contains no evidence showing that Wang's flexible work time

9

was eventually revoked.  Furthermore, while Wang's discharge is documented in a "warning notice," the notice itself does not refer to Wang's alleged lateness (Dkt. #16-7 at 28) and Wang does not assert that he was fired for being late (Dkt. #16-6 at 22).   Because Wang's receipt of the "Communication/Counseling Form" bears no more than a tangential relation to any adverse employment action and because it lacked any consequence, it is not a basis for an adverse employment action.  *Hart v. Life Care Center of Plano*, No. 06-11347, 2007 WL 1855136, *1 (5th Cir. 2007)(per curiam)(finding that a disciplinary warning for reporting late to work was not an adverse employment action); *Dixon v. Moore Wallace, Inc.*, No. 06-10899, 2007 WL 1686973, *1 (5th Cir. 2007)(per curiam)(finding that a final written warning was not an adverse employment action); *See Mattern v. Eastman Kodak Company*, 104 F.3d 702, 708 (5th Cir. 1997)(finding that placement on "final warning" did not constitute an adverse employment action because of its lack of consequence).

The Court further finds that Formosa's failure to permit Wang to work on weekends or holidays does not amount to an adverse employment action.  Wang's failure to work on the weekends did not substantially affect his hiring, firing, granting of leave, discharge, promotion or compensation. Again, Wang does not make any claims as to hiring, granting of leave, promotion or compensation. Wang also does not claim that his failure to work on weekends or holidays resulted in his firing or discharge.  Moreover, the Fifth Circuit has held that control over an employee's hours without more is not an adverse employment action.  *See Benningfield*, 157 F.3d at 377.  Wang has not demonstrated that he received any demotion or similar action due to his inability to work on weekends.  Rather, the record only supports a finding that Wang was ultimately written a "Communication/Counseling Form" after failing to complete a special assignment over a period of four months.  (Dkt. #16-7 at 20).  This occurred after repeated deadline extensions.   Nonetheless, there is no evidence connecting this counseling action to any ultimate employment decision.  Accordingly, Formosa's failure to permit

Wang to work on weekends is not an adverse employment decision.

## Conclusion

Defendant's Motion for Summary Judgment (Dkt. #16) is hereby GRANTED.

It is so ORDERED.

Signed this 9th day of August, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE